UNITED STATES of America,
Plaintiff-Appellee,

v.

Bobby Ray PILKINGTON,
Defendant-Appellant.

No. 78–5312

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1978.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

G. Barton Crum, Montgomery, Ala. (Court-appointed), for defendant-appellant.

Barry E. Teague, U. S. Atty., Charles R. Niven, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Bobby Ray Pilkington, an Alabama state prisoner, was convicted on trial by jury of threatening the life of the President of the United States, in violation of 18 U.S.C. § 871, by mailing a letter containing the threat, which was received at the White House. On appeal, Pilkington contends that there was insufficient evidence that he was sane and that he acted "knowingly and willfully," as required by the statute, to support the jury's verdict. We reject both contentions and affirm the conviction.

The jury's verdict must be sustained if there is substantial evidence, viewed in the light most favorable to the Government, to uphold it. *Burks v. United States,* 437 U.S. 1, 16–18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469 (1942). Thus, if the record reveals substantial evidence that Pilkington acted "knowingly and willfully" and that he was sane at the time, his conviction must be affirmed.

In regard to the mens rea requirements of the statute, the trial judge properly instructed the jury in the language ap- proved in *United States v. Rogers,* 5 Cir., 1974, 488 F.2d 512, 514 n.3, that " '[a] threat is knowingly made if the maker of it comprehends the meaning of the words uttered by him, and a threat is willfully made if in addition to comprehending his words, the maker voluntarily and intelligently utters the words as a declaration of an apparent determination to carry out the threat.' " [1] Within the meaning of that instruction, substantial evidence supports the jury's conclusion that Pilkington "knowingly and willfully" mailed a threatening letter to the President. Most significant is Pilkington's own admission that he knew what his letter said when he wrote it and when he mailed it. Even if we accept, arguendo, that Pilkington's low IQ rendered him susceptible to manipulation by another inmate who told him that an early parole might result if he threatened to kill the President, we are unable to hold as a matter of law that the letter was not sent "knowingly and willfully," within the meaning of the statute, as the jury necessarily concluded under proper instructions of the court.

In regard to the insanity plea, a defendant is insane within the meaning of the law if, at the time of the alleged criminal conduct, as a result of a mental disease or defect, he lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. *United States v. Monroe,* 5 Cir., 1977, 552 F.2d 860; *Blake v. United States,* 5 Cir., 1969, 407 F.2d 908 (en banc). Once the defendant has raised a prima facie defense of insanity, the Government has the burden of proving beyond a reasonable doubt that the defendant is sane. *Burks v. United States,* 437 U.S. 1, 3, 98 S.Ct. 2141, 2143 (1978); *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). In this case, the jury's conclusion that the Government met its burden is supported by the testimony of Dr. Donald Muhich, the doctor in charge of the neuroses section of the Medical Center for Federal Prisoners in Springfield, Missouri, where

---

1. The Government was not required in this case to show an actual intention on Pilking- ton's part to carry out his threat. *See United States v. Rogers,* 5 Cir., 1974, 488 F.2d 512.

Pilkington was confined for observation from February 18, 1978, to March 24, 1978. On the basis of his personal observation, the results of standard psychological tests and interviews with other doctors, and appellant's past records, Dr. Muhich testified that, on the date of the alleged criminal conduct, Pilkington was neither incapable of understanding the wrongfulness of an act nor suffering from a mental disease or defect that would have prevented him from refraining from performing a wrongful act. That testimony represents substantial evidence in support of the jury's verdict.

Thus, to support the jury's verdict, we find sufficient evidence that Pilkington acted "knowingly and willfully" in threatening the life of the President and that he was sane at the time. Thus, we affirm his conviction.

AFFIRMED.