**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Carl Henry HOWELL,**
**Defendant-Appellant.**

No. 83–1190.

United States Court of Appeals,
Fifth Circuit.

Nov. 2, 1983.

Opinion on Denial of Rehearing Jan. 9, 1984.

Thomas A. Autry (Court-appointed), David L. Botsford (Court-appointed Co-Counsel), Austin, Tex., for defendant-appellant.

Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN, GARWOOD and JOLLY, Circuit Judges.

PER CURIAM:

Carl Henry Howell was convicted on two counts of making threats to take the life of the President of the United States in viola-

tion of 18 U.S.C. § 871. Finding that the two counts charge but one offense, we uphold his conviction on Count I, vacate his conviction on Count II, and affirm his sentence.

In February 1982 the office of the United States Secret Service in Austin, Texas, was notified by the local state hospital that one of its patients, Carl Henry Howell, had made threatening remarks against the President of the United States. A Federal Bureau of Investigation Special Agent, Cecil Calvin, visited Howell at the hospital. Calvin explained to Howell why he was there, and Howell agreed to an interview.

During the interview, Howell told the agent that he had a .357 caliber pistol and that there were two people he wanted to kill—one of them was the President. Howell said, "It's too bad that John Hinckley did not get him. I will kill the President if I get a chance." At this point Agent Calvin advised Howell of his constitutional rights. Howell again expressed his desire to kill the President: "If released, I would make my way to Washington and kill him—I will kill the President." Calvin explained the seriousness of the statements. Howell said he completely understood and would stand by them. Calvin asked that Howell write the statements on a "statement" form. Howell said he wanted to consult with a lawyer. The interview terminated and Agent Calvin left the hospital.

The following day Howell gave a hospital social worker an envelope and asked her to give it to Calvin. Later that day, Calvin returned to the hospital to review Howell's files and the social worker handed him the envelope. It contained a letter addressed to Calvin written by Howell setting forth his threats to take the life of the President. Several days later Howell was arrested. He then said he still felt the same and would shoot the President if he could get away.

■ The evidence introduced at trial must be considered in the light most favorable to the government with all reasonable inferences and credibility choices made in favor of the jury's verdict. *Glasser v. Unit-* *ed States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); *United States v. Ocanas,* 628 F.2d 353, 360 (5th Cir.1980), cert. denied, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981).

■ It was incumbent upon the United States to prove beyond a reasonable doubt that (1) the threat was a true threat, and (2) that it was knowingly and intelligently made. *United States v. Robin,* 693 F.2d 376, 379–80 (5th Cir.1982); *United States v. Rogers,* 488 F.2d 512 (5th Cir.1974), *rev'd on other grounds,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). A true threat is a serious one, not uttered in jest, idle talk, or political argument. *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969); *Rogers,* 488 F.2d at 514, n. 2. Whether a statement is a true threat is to be decided by the trier of fact. *United States v. Carrier,* 672 F.2d 300, 306 (2d Cir.), cert. denied, 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). A threat is knowingly made if the maker comprehends the meaning of the words uttered; it is willfully made if the maker voluntarily and intelligently utters the words in an apparent determination to carry out the threat. *United States v. Pilkington,* 583 F.2d 746, 747 (5th Cir.1978), cert. denied, 440 U.S. 948, 99 S.Ct. 1427, 59 L.Ed.2d 637 (1979) (citing *Rogers,* 488 F.2d at 514 n. 3).

■ Howell claims that his speech is protected by the first amendment under *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), a case decided soon after *Watts.* *Brandenburg* held that the government may not "forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447, 89 S.Ct. at 1829, 23 L.Ed.2d at 433 (footnote omitted). While Howell's statements may have been unlikely to incite or produce imminent lawless action, the *Brandenburg* test applies by its terms to advocacy, not to threats such as those made by Howell. The line between the two forms of speech may be difficult to draw in some instances, but this is not one of them.[1] Far from attempting to influ-

---

1. "Advocacy" is defined as "an act of pleading or giving verbal support to a cause." Random House College Dictionary 21 (rev. ed. 1980). A "threat" is a "declaration of an intention or determination to inflict ... injury ...; menace." *Id.* at 1369.

ence others, Howell was merely stating his own unambiguous and apparently quite serious intention to take the life of the President. Not all utterances are afforded the same degree of first amendment protection;[2] whatever contribution statements like Howell's may make to the "uninhibited, robust, and wide-open" debate on public issues to which this nation is committed,[3] the compelling governmental interest in protecting the safety of the Chief Executive has been thought to outweigh it. *See Carrier,* 672 F.2d at 305.

■ Howell also complains that the indictment fails to allege an offense because it omits the word "true" in referring to Howell's threat. It is well established, however, that an indictment must simply state the essential elements of the offense. *Carrier,* 672 F.2d at 303; *United States v. Johnson,* 575 F.2d 1347, 1356 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979); *United States v. Lester,* 541 F.2d 499, 501 (5th Cir.1976). Here, the indictment tracks the language of the statute, charging that the defendant ". . . did willfully and knowingly make an oral [written, in count two] threat to take the life of the President of the United States . . . ." This description was sufficient to apprise Howell of the charge against him and to avoid exposing him to the risk of double jeopardy. *United States v. Montemayor,* 703 F.2d 109, 117 (5th Cir.1983); *Robin,* 693 F.2d at 380. Moreover, the United States proved to the satisfaction of the jury that it was a true threat. Nothing more is required.

■ Howell was not denied his right to a speedy trial. He was arrested on February 25, 1982. However, the following day, the government moved the court for judicial determination of Howell's mental competency. Howell was then committed to the Medical Center for Federal Prisoners, which institution filed its psychiatric evaluation report of Howell on June 25, 1982. The period February 26, until June 25, 1982, is,

therefore, excludable under 18 U.S.C. § 3161(h)(1)(A). Howell was indicted on July 21, 1982, within thirty nonexcludable days of his arrest. *Id.* § 3161(b). Trial was scheduled to begin on September 20, 1982, a date within seventy days of his indictment. *Id.* § 3161(c)(1).

■ Before his trial began, on September 10, Howell filed a *pro se* motion for psychiatric evaluation. His attorney moved for a continuance on September 17, on grounds of insufficient preparation time. Subsequently, on November 5, Howell filed another motion for psychiatric examination through his attorney and moved for another continuance on December 3, 1982. On January 12, 1983, the case was set for trial on January 24. Voir dire began and was completed on January 24, but the trial itself was delayed until January 31 to allow a civil case to be tried first. On January 31, before the jury was sworn, the trial court heard argument on Howell's motion to dismiss for violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174. The government contended that the period of delay excludable under § 3161(h) began on September 10, when Howell's *pro se* motion was filed, and ended on January 10, the day before the case was set for trial, bringing the total time elapsed to only sixty-four days, within the seventy-day limit. Without explanation, the court denied Howell's motion and the case proceeded to trial.

In renewing his speedy trial challenge in this court, Howell puts forth two arguments. First, he claims that the period of excludable delay did not begin until September 17, when Howell's attorney filed his first continuance motion. Under this calculation, the nonexcludable time elapsed before voir dire would be seventy-two days. Howell bases this argument on evidence that the court did not consider the *pro se* motion he filed on September 10, but waited until Howell's attorney filed the second motion for psychiatric evaluation on November 5. Howell points to a letter addressed to his attorney from the trial

---

**2.** *See, e.g., New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (child pornography); *Central Hudson Gas v. Public Serv. Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (commercial speech); *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) (obscenity); *Chaplinsky v.*

*New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) ("fighting words").

**3.** *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

judge's briefing attorney, dated October 28, 1982. In the letter, the briefing attorney states that when he received the *pro se* motion, he "promptly" contacted Howell's attorney. Howell's attorney told the briefing attorney that he had been out of town but that he would "immediately" file a motion for a continuance and one for a psychiatric evaluation that would supplant the *pro se* motion. The briefing attorney's letter then states, "As a result of your statement that you would file a motion for psychiatric examination that would supplant your client's pro se motion, this Court has not taken formal action on Mr. Howell's pro se motion."

This correspondence neither erases the filing of the *pro se* motion nor requires that it be disregarded. The court took note of the motion on September 10. Its consultation with Howell's counsel was merely a prudent step, to be certain that Howell's lawyer knew of Howell's *pro se* activities. Obviously, trial could not commence on September 20, as scheduled, if a psychiatric examination were ordered. It was, therefore, necessary to be certain that Howell wanted both the psychiatric examination and a continuance of the trial. Accordingly, the period of excludable delay began on September 10, bringing the January 24 date of voir dire within seventy days of Howell's indictment. *See* 18 U.S.C. § 3161(h)(1)(F), (J).

█ Howell's other argument is that his trial began, not on the date of voir dire, but on January 31, the date the jury was empaneled and sworn. Howell relies on cases holding that, for purposes of the constitutional guarantee against double jeopardy, trial begins when a jury is sworn, or in a bench trial, when the judge begins to receive evidence. *See, e.g., Crist v. Bretz,* 437 U.S. 28, 35–37, 98 S.Ct. 2156, 2161–62, 57 L.Ed.2d 24, 31–32 (1978); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 568–70, 97 S.Ct. 1349, 1353–54, 51 L.Ed.2d 642, 649–50 (1977). The only other circuit that has considered when trial should be deemed to have "commenced" under the Speedy Trial Act has concluded that it begins at voir dire, rejecting the analogy to double jeopardy. *United States v. Gonzalez,* 671 F.2d 441, 443–444 & 444 n. 4 (11th Cir.), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982). Like the *Gonzalez* court, we are convinced that the constitutional considerations underlying the double jeopardy clause are "wholly different from

the premises" of the Speedy Trial Act. 671 F.2d at 444 n. 4. As the Supreme Court explained in *Crist,* "The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury." 437 U.S. at 35, 98 S.Ct. at 2161, 57 L.Ed.2d at 31. Howell does not argue, and we do not believe, that Congress had any similar objective in mind when it passed the Speedy Trial Act.

Rather, Howell argues that the Act was abused when the trial court postponed the swearing in of the jury in order to allow a civil case to be tried first. Neither this seven-day delay, nor the earlier seven-day period between the filing of Howell's *pro se* motion and the filing of his motion for a continuance, was an unreasonable length of time. We perceive no violation of either the spirit or the letter of the Act. *Cf. Gonzalez,* 671 F.2d at 444 (decision is not to be viewed as a license to commence voir dire within the prescribed time limits and then take a prolonged recess before jury is sworn).

Moreover, Howell's counsel filed a waiver of his speedy trial rights on September 17 when he sought a continuance. On the record before us, we cannot say that the waiver was "manifestly intended to secure a continuance ... and [was] submitted for no other purpose." *United States v. De-Longchamps,* 679 F.2d 217, 219 (11th Cir. 1982). Accordingly, no violation of 18 U.S.C. § 3161(h)(1) occurred.

█ Under the concurrent sentence doctrine, the existence of one valid conviction may make unnecessary the review of other convictions when, as in this case, concurrent sentences have been imposed. *United States v. Montemayor,* 703 F.2d 109, 114 (5th Cir.1983); *United States v. Hernandez,* 662 F.2d 289, 291 (5th Cir.1981); *United States v. Rubin,* 591 F.2d 278, 288 (5th Cir.), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979). However, to be certain that Howell suffers no adverse consequences, we vacate the second conviction.

For these reasons, the conviction on Count I is AFFIRMED. The conviction on Count II is VACATED.

## ON PETITION FOR REHEARING

In a petition for rehearing, the United States requests that we amend our opinion to specify that the reason the two counts

were considered to be but one offense is that the written statement that was the subject of Count II was prepared at the request of the Secret Service agent and began, "the following is a statement which I was asked to prepare for Mr. Calvin of the Secret Service of Austin, Texas." The Government states that this fact was not included in its brief but that amendment of the opinion to reflect it is important to avoid a conflict between the rationale of this opinion and our opinion in *United States v. Carvin*, 555 F.2d 1303 (5th Cir. 1977).

The request being well-taken, we amend our opinion accordingly.

Howell's petition for rehearing is hereby DENIED. The court changes the word "intentionally" on p. 1260, supra, to "intelligently" in order to correct a clerical error.