# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47888-9-II |
| Respondent, | |
| v. | |
| JOSEPH LEE NICKOLS, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Joseph Lee Nickols appeals his conviction for two counts of felony harassment.  Nickols argues that the State failed to present sufficient evidence to prove that he specifically threatened either Jack Haskins or Kari Lupo.  The State presented sufficient evidence to convict Nickols of harassment of Haskins and Lupo, criminal justice participants who were performing their official duties, and we affirm.

## FACTS

On May 26, 2015, Nickols, an inmate at the Lewis County Jail, attempted to mail a letter to his girlfriend.  Jack Haskins, the jail's classification and compliance officer, read the outgoing mail as part of his official duties.  The letter detailed Nickols's attempt to set up a criminal enterprise, discussed an inmate associate in the jail who had access to a .40 pistol and was "not afraid to use it," and discussed ordering a hit on someone named "Cory."  Clerk's Papers (CP) at 65.  After reading the letter, Haskins forwarded Nickols's letter to a detective at the Lewis County Sheriff's Office.

Haskins then directed jail support technician, Kari Lupo, to send a notice of restricted mail to Nickols to notify him that his outgoing letter was withheld according to the jail's protocol. The notice of restricted mail informed Nickols that his "LETTER HAS BEEN TURNED OVER TO DETECTIVES FOR POSSIBLE CRIMINAL CHARGES." Ex. 3. The notice was signed, "By: K.LUPO PER OFC. HASKINS." Ex. 3. Nickols received the notice of restricted mail on May 26, the same day he attempted to mail his letter.

Two days later, Haskins received another letter that Nickols had attempted to mail to his girlfriend. The letter was folded to reveal the following message, written in large letters, as soon as the letter was opened: "Fuck you punks reading this send that to the DA." Ex. 2. Haskins read the letter, which contained the following relevant passages:

> You will never believe what this punk ass jail did now lol I got them fucken with my mail again and there sending my letter to the DA for criminal charges fuck you you punk as Bitches hope and want to see you kids get raped and shoot in the head or hit by a car send that to the DA <u>Bitch</u> . . . [.]

> I need them to fuck up and send my letter to the DA now im going to shoot all who fucked with it with there own gun lol like in my last law suit I should have never let up on them when I had the gun there so dumb they gave me a gun and this time I got money for a attorney. . . [.]

Ex. 2. Nickols did not name either Haskins or Lupo in this second letter.

The State charged Nickols with two counts of felony harassment of a criminal justice participant for harassing Haskins and Lupo. At trial, Haskins testified that his reaction to the letter was that Nickols "wrote a note to all of the officers who read his mail." I Verbatim Report of Proceedings (VRP) at 105. Haskins further testified that "Nickols was - - appeared to be threatening my kids and myself. . . . I was in fear that he was going to hurt me or my kids." I VRP at 106. Although Haskins had been threatened an estimated 200-300 times over his 31-year-career

as a corrections officer, he felt that Nickols's threat in the letter was "out of the ordinary." I VRP at 106. When asked why this was different from other prior interactions with Nickols, Haskins stated that Nickols "was very specific in what he was going to do" this time. I VRP at 107. Haskins knew that Nickols was scheduled to be released within days after writing the second letter and was concerned that "he was going to be on the loose." I VRP at 107. Finally, Haskins testified that Nickols's statements in the second letter scared him because the first letter indicated that Nickols would have access to a firearm after being released.

Lupo testified that she had never met Nickols and did not read either of his letters. In order to prepare the notice of restricted mail, Lupo read an information log prepared by Haskins. In the log entry for the second letter, Haskins had quoted portions of the letter that he determined were threatening. As Lupo read these quoted passages in the log, she realized her name was on the May 26 notice of restricted mail that Nickols received before writing the second letter. Lupo felt that she was "one of those people who messed with Mr. Nickols'[s] mail." I VRP at 123. She became "hysterical and started crying" and left her desk. I VRP at 123. Lupo further testified that her knowledge that the first letter contained information about Nickols ordering a hit on someone made her more fearful after reading the passages in the second letter.

The jury found Nickols guilty on both counts. Nickols appeals.

## ANALYSIS

Nickols argues that there was insufficient evidence to prove that he specifically threatened either Haskins or Lupo because he did not use their names in his letter and the threats were general rants broadly directed toward a group of people in the jail. Nickols further argues that the State

3

speculated when it identified Haskins and Lupo as the targets of the general threats. Nickols's arguments fail.

We review sufficiency of the evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences drawn from it. *Salinas*, 119 Wn.2d at 201. All "reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are deemed equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A person is guilty of felony harassment of a criminal justice participant if he or she (1) threatens, (2) to cause bodily injury, (3) to the person threatened, (4) without lawful authority. RCW 9A.46.020. RCW 9A.46 does not define "person threatened," but our Supreme Court has explained that to be guilty of felony harassment, the defendant does not need to communicate the threat directly to the person threatened. Rather, the person making the threat must only (1) subjectively know that he or she is communicating a threat and (2) "must know that the communication he or she imparts directly or indirectly is a threat of intent to cause bodily injury to the person threatened or to another person." *State v. J.M.*, 144 Wn.2d 472, 481, 28 P.3d 720 (2001).

No. 47888-9-II

Here, Nickols did not have to know that the threat would be communicated directly to Haskins and Lupo. Instead, the State had to prove that Nickols knew he was communicating a threat and that he knew the threat communicated his intent to cause bodily injury to the person (or people) threatened. The State proved that Nickols knew he was communicating a threat because although he wrote the letter directly to his girlfriend, he wrote a specific message on the letter to jail staff who he believed would read the letter. And he knew the letter communicated a threat to inflict bodily harm because he included detailed descriptions of the bodily harm threatened. It was reasonable to infer that Haskins and Lupo were the people threatened because Nickols referenced the people who interfered with his mail and Haskins and Lupo were named in the restricted mail notice. Accordingly, the State presented sufficient evidence to support Nickols felony harassment convictions. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.