# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55192-6-II |
| Respondent, | |
| v. | |
| CARMEN COPELAND, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Carmen Copeland appeals her conviction and sentence for felony harassment. Copeland argues that there was insufficient evidence to support her conviction and that the trial court erred by imposing a criminal filing fee. We hold that the evidence was sufficient to sustain Copeland's conviction and that the trial court erred by imposing a criminal filing fee. Accordingly, we affirm Copeland's conviction and remand to the trial court to strike the criminal filing fee.

## FACTS

The Camas Police Department received an email from Copeland stating that Deanna Rusch would be "chopped to her death" for hurting Copeland and her children. Verbatim Report of Proceedings (VRP) (Nov. 3, 2020) at 173. Law enforcement officers investigated the circumstances behind the email, and the State charged Copeland with felony harassment.

### A. TRIAL

At trial, witnesses testified to the following facts.

Copeland and her former spouse ended their marriage and were involved in dissolution and post-dissolution proceedings that took place in 2016, 2017, and perhaps some of 2018. Copeland's

former spouse hired Rusch, a family law attorney, to represent him in the dissolution. Copeland's former spouse received full custody of their two children, and Copeland was allowed no visitation.

During and after the dissolution proceedings, Copeland sent hundreds of pages of notes and emails to Rusch and her law office expressing her displeasure with the outcome of the dissolution proceedings. Rusch also served as a member of the Camas city council, and Copeland sent hundreds of pages of handwritten and typed notes to the City and local police department expressing unhappiness with the results of the dissolution proceedings. The messages did not threaten physical violence but stated that Copeland would file a bar complaint or sue Rusch, and asked that Rusch be kicked off of the city council.

After the dissolution proceedings ended, the communications became less frequent but never stopped. Because of the frequency and bizarre nature of the communication, Rusch experienced "a little panic and anxiety" when Copeland sent messages to her. VRP (Nov. 3, 2020) at 204.

In approximately 2019, Copeland filed separate lawsuits against Rusch and her law firm. Copeland did not appear for hearings in the lawsuits, and they were dismissed.

On August 27, 2020, Copeland sent an email to the Camas police chief and two other individuals. The email expressed anger with Copeland's former spouse and stated in relevant part:

> MAKE SURE DEANNA L RUSCH FAMILY LAWYER OF MARK WAYNE COPELAND AND JUDGE JOHN P. FAIRGRIEVE UNDERSTAND THAT SHE WILL BE CHOPPED TO HER DEATH FOR HURTING ME AND MY CHILDREN FOR SO LONG.

Ex. 1.

Law enforcement officers were concerned by the message and opened an investigation. Part of that investigation involved contacting Rusch, telling her about the email, and forwarding a copy of the email to her.

When Rusch received a copy of the email, her reaction was "panic" and "freak[ing] out." VRP (Nov. 3, 2020) at 207. Rusch was especially concerned because Copeland was living in the same city as her. Rusch did not leave her house or let her dogs go outside until she heard that Copeland had been arrested. Rusch said she was afraid and believed that Copeland could carry out the threat based on their past contact with each other.

Law enforcement also contacted Copeland, who admitted to sending the email. But when asked about the paragraph with the language about chopping Rusch to her death, Copeland said she did not write that paragraph, that the language was written by the autocorrect feature on her phone, and "that she would never threaten or hurt anybody." VRP (Nov. 3, 2020) at 176. Law enforcement contacted Copeland two days later, and Copeland again confirmed that she sent the email and again claimed that the autocorrect feature on her phone wrote the part of the email about chopping Rusch to her death.

B.    VERDICT AND SENTENCING

The jury found Copeland guilty of felony harassment. At the sentencing hearing, the trial court found Copeland indigent for the purposes of LFOs and stated that it would waive as many of the discretionary LFOs as it had authority to. The judgment and sentence reflected that the trial court found Copeland indigent for the purposes of legal financial obligations (LFOs) and included a provision imposing a $200 criminal filing fee.

Copeland appeals.

## ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Copeland argues that the evidence is insufficient to support her conviction for felony harassment. We disagree.

#### 1. Legal Principles

We review challenges to the sufficiency of the evidence by considering whether any rational trier of fact, in viewing the evidence in the light most favorable to the State, could find the essential elements of the crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). An insufficiency of the evidence claim admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All such inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id*. Direct and circumstantial evidence are equally reliable. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

Under RCW 9A.46.020(1), a person is guilty of harassment if (1) without lawful authority, the person knowingly threatens to cause bodily injury immediately or in the future to another person, and (2) the person by words or conduct places the other person in reasonable fear that the threat will be carried out. A person who harasses another is guilty of a class C felony if they threaten to kill the person threatened. RCW 9A.46.020(2)(b)(ii). A threat to kill may originally

be made to a third party as long as the person threatened finds out about the threat. *State v. J.M.*, 144 Wn.2d 472, 482, 28 P.3d 720 (2001).

2.    True Threat

Copeland argues that the State presented insufficient evidence to prove that Copeland's email was a "true threat."

To avoid unconstitutional infringement on protected speech, the harassment statute must be read to only prohibit "true threats." *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004). Because of the constitutional implications, we review sufficiency of the evidence challenges to determine whether a "true threat" was made under a heightened standard of review:

> [T]he First Amendment demands more than application of our usual standard of review for sufficiency of the evidence. Instead, we must independently examine the whole record to ensure that the judgment does not constitute a forbidden intrusion into the field of free expression. We are required to independently review only crucial facts, that is, those facts so intermingled with the legal question that it is necessary to analyze them in order to pass on the constitutional question. doing so, we may review evidence in the record not considered by the lower court in deciding the constitutional question. However, our review does not extend to factual determinations such as witness credibility.

*State v. Locke*, 175 Wn. App. 779, 790–91, 307 P.3d 771 (2013) (citations omitted), *review denied*, 179 Wn.2d 1021 (2014).

A "true threat" is a statement made in a context or under circumstances in which a reasonable person would foresee that the statement would be interpreted as a serious expression of intent to inflict bodily harm upon another. *State v. Barnes*, 158 Wn. App. 602, 610, 243 P.3d 165 (2010). Whether a "true threat" is made is "determined under an objective standard that focuses on the speaker." *Kilburn*, 151 Wn.2d at 44. "A true threat is a serious threat, not one said in jest,

5

idle talk, or political argument*." Id*. at 43.  Nor is it a "hyperbolic expression[] of frustration." *State v. Kohonen*, 192 Wn. App. 567, 583, 370 P.3d 16 (2016).

Several principles separate true threats from hyperbole or joke.  *State v. D.R.C.*, 13 Wn. App. 2d 818, 826, 467 P.3d 994 (2020).  "Specific plans of causing harm are more threatening than vagaries." *Id*.  Threats are more serious when made in an angry, non-flippant demeanor. *See State v. Trey M.*, 186 Wn.2d 884, 889, 907, 383 P.3d 474 (2016), *cert. denied*, 138 S. Ct. 313 (2017).  Further,

> [i]n assessing whether the defendant's speech constituted a true threat, it is helpful to hear from members of the defendant's intended audience.  An audience member's actual reactions are often typical of what would be expected and therefore provide a guide for "what reaction a reasonable speaker under the circumstances would have foreseen."

*D.R.C.*, 13 Wn. App. 2d at 826 (quoting *Kohonen*, 192 Wn. App. at 580).

Here, Copeland's email was somewhere between specific and vague.  The statement that Rusch would be chopped to her death for hurting Copeland and her children provided both a method of harm and reason for killing Rusch, but it did not say when or where the threat would be carried out.  These details were conveyed in an angry, non-flippant demeanor, as they were typed in all capital letters, and the rest of Copeland's email expressed anger with her former spouse.

Importantly, law enforcement's reaction to the email sheds light on what a reasonable speaker could have foreseen as a reaction from audience members.  Here, the email concerned law enforcement sufficiently to prompt them to investigate the circumstances behind the email.  During the investigation, even Copeland appeared to acknowledge that the language was threatening by

acknowledging she sent the email but saying that she "would never threaten or hurt anybody." VRP (Nov. 3, 2020) at 176.

Together, the details of the threat and the angry demeanor of the email, combined with law enforcement's actual reactions and Copeland's own reaction to the "chopping" language, show that a reasonable speaker would have foreseen that the threat would be interpreted as a serious expression of intent to inflict bodily harm upon another. *See D.R.C.*, 13 Wn. App.2d at 826. Therefore, we hold that the evidence was sufficient to show that Copeland's email was a true threat.

  3.  Reasonable Fear

Copeland next argues that the State presented insufficient evidence to prove that Rusch was placed in reasonable fear that she would be killed. Br. of Appellant 15-17.

To prove felony harassment based on a threat to kill, the State must show that the person threatened was placed in reasonable fear that they would be killed. *State v. C.G.*, 150 Wn.2d 604, 610, 80 P.3d 594 (2003). Assuming the evidence shows the victim's subjective fear, the standard for determining whether the fear was reasonable is an objective standard considering the context of the case. *State v. Cross*, 156 Wn. App. 568, 582, 234 P.3d 288 (2010), *modified on remand*, 166 Wn. App. 320, 271 P.3d 264 (2012).

Here, Rusch testified that she subjectively feared that the threat to kill would be carried out. Therefore, we must determine whether there is sufficient evidence to show that Rusch's fear was objectively reasonable given the context of Copeland's conduct. *See Cross*, 156 Wn. App. at 582.

The evidence shows that based on the surrounding facts and circumstances, Rusch had reason to believe that Copeland wanted to cause her harm. Copeland's email came after Rusch represented Copeland's former spouse in dissolution proceedings that resulted in Copeland being unable to see her children. Copeland then spent years contacting Rusch in her various capacities, expressing unhappiness with the outcome of those dissolution proceedings. The nature of these communications was "bizarre" and involved thousands of pages of handwritten and typed messages. VRP (Nov. 3, 2020) at 204.

While Rusch was an attorney and a city council member and may be accustomed to some expressions of dissatisfaction with her work in those capacities, the persistence, nature, and volume of Copeland's communications brought the behavior outside the realm of the normal expressions of dissatisfaction an attorney or local public figure experiences. Previously, Copeland had followed through on her expressions of intent to sue Rusch, which gave Rusch reason to believe that Copeland was willing to take action and was not just conveying empty threats.

Copeland's email stated that Rusch would be chopped to her death for hurting Copeland and her children for so long. This email aligned with the years of communications from Copeland. And because Copeland and Rusch were in the same city, their close proximity provided a real opportunity for the threat to kill to be carried out.

Given the evidence of the surrounding facts and circumstances, a rational factfinder, viewing the evidence and all reasonable inferences in the light most favorable to the State, could find beyond a reasonable doubt that Rusch's fear that Copeland would carry out her threat to kill Rusch was reasonable. *See Cross*, 156 Wn. App. at 582. Therefore, we hold that there was

8

sufficient evidence to show that Rusch was placed in reasonable fear that Copeland would kill her. *See Salinas*, 119 Wn.2d at 201.

The evidence was sufficient to show that Copeland's email was a true threat and that Rusch was placed in reasonable fear that Copeland would kill her. Therefore, we affirm Copeland's conviction for felony harassment.

B.       CRIMINAL FILING FEE

Copeland argues that the trial court erred by imposing a $200 criminal filing fee when it found her indigent for the purposes of LFOs. The State concedes that Copeland is indigent and that the criminal filing fee was improperly imposed. We accept the State's concession.

Sentencing courts are prohibited from imposing discretionary costs on a defendant who is indigent. *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018). Criminal filing fees are discretionary costs that may not be imposed on indigent defendants. RCW 36.18.020(2)(h).[1]

Here, the trial court imposed a criminal filing fee on Copeland despite finding Copeland was indigent. This was error. Accordingly, we remand to the trial court to strike the criminal filing fee.

We affirm Copeland's conviction and remand to the trial court to strike the criminal filing fee.

---

[1] RCW 36.18.020 was amended in 2021. However, there were no substantive changes made affecting this appeal. Therefore, we cite to the current statute.

No. 55192-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Worswick, J.

Maxa, J.