6 P.3d 607 (2000)
101 Wash.App. 716
STATE of Washington, Respondent,
v.
J.M., B.D. 8/2/85, Appellant.
No. 44831-5-I.
Court of Appeals of Washington, Division 1.
August 7, 2000.
*608 James Dixon, Nielson Broman, Seattle, for Appellant.
Maureen Howard, Seattle, for Respondent.
KENNEDY, J.
The juvenile court adjudicated J.M. guilty of felony harassment in violation of RCW 9A.46.020(1)(a)(i) and he appeals, contending that reversal is required because the State failed to prove beyond a reasonable doubt that J.M. knew or reasonably should have known that his threat to kill his school principal would be communicated to the principal, and also failed to prove that J.M. knowingly engaged in words or conduct that placed the school principal in reasonable fear that the threat would be carried out. We conclude that the only mens rea intended by the Legislature is as stated in the plain language of section (1)(a)(i) of the harassment statute: The perpetrator must knowingly communicate a threat to cause bodily injury immediately or in the future to the person threatened or to any other person. The State need not prove, in addition, that the perpetrator knew or should have known that the person threatened would learn of the threat, but only that the person threatened did learn of it and, based on words or conduct of the perpetrator, was placed in reasonable fear *609 that the threat would be carried out. The State also need not prove the perpetrator's state of mind with respect to the words or conduct that placed the person threatened in reasonable fear that the threat would be carried out. Accordingly, we affirm the adjudication.

FACTS
On April 28, 1999, approximately one week after the highly-publicized school shootings at Columbine High School in Littleton, Colorado, two Denny Middle School students, fourteen-year-old S.B. and thirteen-year-old J.T., were walking home from school. Thirteen-year-old J.M., who had recently been suspended from Denny Middle School, joined S.B. and J.T. and began to complain about the punishment he received at school. According to J.T., J.M. was angry at Wayne Hashiguchi, the principal of Denny Middle School; John Boyd, a Denny Middle School administrator; and Kevin Sharper, a Denny Middle School security person. The three students began talking about the Columbine shootings and J.M. said, "[T]hat's like something I would do[but] I'll only kill Mr. Hashiguchi, Mr. Boyd and Mr. Sharper." Clerk's Papers at 43. J.M. stated that he and his neighbor had a plan to enter the school, kill these men, and then move out of state. According to J.T., J.M. seemed excited and was "socking" his own hand as he spoke. Report of Proceedings at 39. S.B. also observed that J.M. was excited and anxious.
At first, S.B. did not take J.M.'s statements seriously. But "[a]s he thought about it that night he started to think that it was possible [J.M.] would do something like that." Clerk's Papers at 43. The next day at school, S.B. told a friend what J.M. had said and asked that friend if he thought J.M. "would carry through on his threat." Id. A Denny Middle School teacher overheard this conversation and reported it to a school counselor. The counselor brought S.B. to Hashiguchi, and S.B. told Hashiguchi what J.M. had said the previous day. Hashiguchiwho was aware of J.M.'s disciplinary problems at school and had observed J.M. "cry and be emotional, angry and loud"was "shocked, surprised and concerned" and "afraid for his personal safety[.]" Id. at 44.
Hashiguchi reported the incident to the Seattle Police Department, and the State charged J.M. with felony harassment. At J.M.'s adjudicatory hearing at the close of the State's case, J.M. moved for dismissal, arguing that the State presented insufficient evidence that J.M. knew his threat would be communicated to the school principal. The juvenile court disagreed that it was necessary for the State to prove such knowledge, and denied the motion. Subsequently, the court found that J.M. made threats that were communicated to Hashiguchi, that J.M. made these threats knowingly, and that Hashiguchi's fear for his safety was reasonable, in light of the recent shootings at Columbine High School, J.M.'s disciplinary record, and Hashiguchi's personal experience with J.M.'s emotional reaction to disciplinary measures that had previously been imposed. The court adjudicated J.M. guilty of felony harassment. J.M. appeals.

DISCUSSION

I. The Elements of Harassment
J.M. contends that the harassment statute, RCW 9A.46.020, requires the State to prove that he knew or reasonably should have known that the threat he communicated to two school chums to kill the school principal would be further communicated to the school principal, and that he also knowingly engaged in words or conduct that placed the principal in reasonable fear that the threat would be carried out. Insofar as here pertinent, the harassment statute reads as follows:
(1) A person is guilty of harassment if:
(a) Without lawful authority the person knowingly threatens:
(i)To cause bodily injury immediately or in the future to the person threatened or to any other person; [and]
(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.
RCW 9A.46.020(1). "Threat" means, inter alia, "to communicate directly or indirectly *610 the intent ... [t]o cause bodily injury in the future to the person threatened or to any other person[.]" RCW 9A.04.110(25)(a). Harassment in violation of RCW 9A.46.020(1)(a)(i) by threatening to kill the person threatened or any other person is a class C felony. RCW 9A.46.020(2).
J.M. contends that the adverb "knowingly" found in section (1)(a) of RCW 9A.46.020 modifies not only "threatens to cause bodily injury" under subsection (a)(i) but also modifies "by words or conduct places the person threatened in reasonable fear that the threat will be carried out" under subsection (b). J.M reasons that threats, particularly threats to kill or otherwise inflict bodily injury, are seldom communicated in any other manner than knowingly or intentionally; therefore, the Legislature must have intended to criminalize something more than merely consciously uttering a threatand the "something more" can only be knowingly engaging in conduct that places the person threatened in reasonable fear that the threat will be carried out. Because a perpetrator who communicates a threat indirectly, e.g., by means of a third person, cannot "knowingly by words or conduct place the person threatened in reasonable fear that the threat will be carried out" unless the perpetrator knows or intends that the threat will be further communicated to that person, J.M. contends that the "words or conduct" element must contemplate some sort of harassing acts knowingly or intentionally directed toward the victim. Otherwise, J.M. concludes, the "words or conduct" element would not have been included, and the Legislature would have written subsection (b) of the statute to read: "[T]he person threatened was in reasonable fear that the threat would be carried out." Appellant's Supp. Br. At 6.
In response, the State maintains that in accord with the plain meaning of the statute, the adverb "knowingly" modifies only the verb that it immediately precedes, so that insofar as the perpetrator's mens rea is concerned, the State need only prove that the accused knowingly threatened to cause bodily injury. By the State's proposed interpretation, the focus under subsection (b) of the statute is the reasonableness of the fear of the person threatened that the threat will be carried out, which reasonableness must be measured objectively in light of words or conduct of the perpetrator that the perpetrator may but need not have known or intended would place the person threatened in reasonable fear that the threat will be carried out.
The State reasons further that the Legislature must have recognized that words or conduct of a perpetrator not previously thought to be particularly significant could reasonably be viewed as highly significant when placed in context with a threat made by that perpetrator. Applying the State's reasoning to the facts of this case, it would follow that a rational trier of fact could find that the school principal was placed in reasonable fear that J.M. would carry out his threat to kill him based on the following words or conduct of J.M.: (1) J.M. made the threat only a few days after the killings at Columbine High School during a conversation about that atrocity in which J.M. stated that he planned to do the same thing, limiting the killing, however, to the school principal and two other administrators at the school; (2) J.M., who had been suspended from school, was excited and angry when he made the threat, pounding his fist into his hand; (3) J.M. had responded to previous disciplinary measures imposed at the school with loud, angry outbursts of a highly emotional nature, and the school principal knew this to be so because he had seen it happen.
As the State points out, the statutory definition of "`threat' does not contain a mental elementit merely reads (insofar as here pertinent): "Threat" means to communicate directly or indirectly the intent: (a) To cause bodily injury in the future to the person threatened or to any other person[.]" RCW 9A.04.110(25)(a). The State reasons that the adverb "knowingly" modifies the verb "threaten" in order to protect free speech, so that within the context of RCW 9A.46.020(1)(a) and subsection (i), a "knowing threat" means a "true threat" as that term has been used by the appellate courts, as distinguished from an idle threat. A "true threat" is a statement made in a context or under such circumstances that would cause a *611 reasonable person to foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm or to take the life of another person. State v. Knowles, 91 Wash.App. 367, 373, 957 P.2d 797 (1998) (holding that the definition of "threat" contained in RCW 9A.04.110(25)(d) and (j) encompasses both protected and unprotected speech but the definition of "threat" is not unconstitutionally overbroad in the context of RCW 9A.72.160, the Intimidating a Judge statute, because the statute only proscribes threats of substantial harm based on the discharge of a judge's official duties), review denied, 136 Wash.2d 1029, 972 P.2d 465 (1998); see also State v. Williams, 98 Wash.App. 765, 769-71, 991 P.2d 107 (2000) (holding that RCW 9A.46.020(1)(a)(iv) is not unconstitutionally overbroad, although it proscribes some protected speech, because the statute proscribes only threats to do an act that is intended to substantially harm another's physical or mental health or safety, the threat must be malicious, and criminal liability only attaches if the person threatened has a reasonable fear that the threat will be carried out).
The State's reasoning is supported in part by the Legislature's finding that protection from harassment can be accomplished without infringing on constitutionally protected speech or activitywhich indicates that the Legislature was aware the statute encompasses some protected speech and wanted to avoid overstepping constitutional bounds. See RCW 9A.46.010. The State's reasoning is further supported by our Supreme Court's seminal discussion of the mental state of knowledge contained in State v. Shipp, 93 Wash.2d 510, 516-17, 610 P.2d 1322 (1980). Under RCW 9A.08.010(1)(b), a person acts knowingly if he or she is aware of a fact, facts or circumstances or results described by a statute defining an offensei.e., has subjective knowledge of such factsand a trier of fact may (but is not required to) infer actual knowledge if a reasonable person under the same circumstances would believe such facts exist: "The comparison to the ordinary person has been imported into many legal definitions of knowledge to make it clear to the jury what level of circumstantial evidence is sufficient for it to conclude that the perpetrator had actual knowledge. But the comparison creates only an inference. The jury must still find subjective knowledge." Id. at 517, 610 P.2d 1322 (citation omitted).
Here, J.M. does not deny that he knowingly communicated a "true threat." J.M. implicitly concedes that, in the context of the massive news coverage of the Columbine High School shootings and his own reference to those shootings when communicating the threat, a reasonable person would foresee that his statement would be interpreted as a serious threat of intention to take the life of the school principal. J.M. does not contend that he personally lacked subjective knowledge that his statement would be so interpreted. He only contends that reversal is required because the State failed to prove that he intended a specific person, his school principal, to interpret the statement as a serious threatby failing to prove that he knew the principal would learn of the threat.
Having the arguments of both sides in mind, we turn to the disposition of this case. "In interpreting statutory provisions, `[t]he fundamental objective ... is to ascertain and carry out the intent of the Legislature.'" State v. Alvarez, 128 Wash.2d 1, 11, 904 P.2d 754 (1995) (footnote omitted) (alteration in original). "If the meaning of a statute is clear or can reasonably be discerned from the entire act or from statutory history, there is no resort to rules of statutory construction." In re Post-Sentencing Review of Charles, 135 Wash.2d 239, 250 n. 4, 955 P.2d 798 (1998).
"In 1985 the Legislature enacted the anti-harassment act as `part of a multifaceted remedial scheme ... to protect citizens from harmful harassing behavior.'" Alvarez, 128 Wash.2d at 12, 904 P.2d 754 (footnote omitted); see also RCW 9A.46.010 (containing legislative findings that "the prevention of serious, personal harassment is an important government objective" and that protection of citizens from harassment "can be accomplished without infringing on constitutionally protected speech or activity").
The most natural grammatical reading of the harassment statute suggests that *612 the adverb "knowingly" modifies only the verb phrase that it immediately precedes, here, "threatens to cause bodily injury." Cf. United States v. X-Citement Video, Inc., 513 U.S. 64, 68, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (acknowledging that the "most natural grammatical reading ... suggests that the term "knowingly" modifies only the surrounding verbs[.]") Nonetheless, strict grammatical construction may be disregarded if, e.g., there is supporting legislative intent. Id. at 68-69, 73-78, 115 S.Ct. 464 (holding that "knowingly" modified not only the verbs it immediately preceded, but also modified the phrase, "use of a minor" in federal child pornography statute); but cf. State v. Brown, 140 Wash.2d 456, 467-69, 998 P.2d 321 (2000) (under plain meaning of statute defining third degree assault as assault of a law enforcement officer who was performing official duties at the time of the assault, knowledge that the victim was a police officer performing official duties is not an element of the crime; declining to add an element not placed in the statute by the Legislature) (overruling State v. Allen, 67 Wash.App. 824, 840 P.2d 905 (1992), insofar as it held to the contrary).
The legislative intent as expressed in the harassment statute as a whole does not support J.M.'s contention that we should disregard the most natural grammatical construction. A person who has been threatened indirectly may be placed in fear that is just as reasonable (based on words or conduct of the perpetrator) as if the threat had been made directly. The threatened person does have to find out that the threat was made, one way or another, or else there can be no reasonable fear on the part of that person that the threat will be carried out. But whether or not the perpetrator intended the threatened person to find out about the threat is irrelevant to the reasonableness of the fear that the threat will be carried out once the person threatened does find out about the threat. Although it may seem intuitive that in order to harass someone the perpetrator must intend that the person threatened find out that he or she has been threatened, we have to look to the Legislature's definition of the crimeand the Legislature has not placed an intent or knowledge element with respect to the finding out. See RCW 9A.46.020(1)(a)(i)-(b). We decline to add such an element. Cf. State v. Hansen, 122 Wash.2d 712, 717, 862 P.2d 117 (1993) (holding that a perpetrator who communicated to his attorney a threat to "blow away" a judge was guilty of violating the Intimidating a Judge statute, notwithstanding the perpetrator's belief that the judge would never learn of his threat, because the Intimidating a Judge statute, RCW 9A.72.160(1), does not include a requirement "that a threat ... be made with the intent or knowledge that it will reach the judge").
We agree with J.M. that the harassment statute requires something more than communication of the threat directly or indirectly: By words or conduct the perpetrator must place the person threatened in reasonable fear that the threat will be carried out. See RCW 9A.46.020(1). But we agree with the State that such words or conduct do not require any particular knowledge or intent on the part of the person making the threat that the person threatened will hear about the threat, or any particular knowledge or intent that the words or conduct at issue will place the person threatened in reasonable fear that the threat will be carried out. Rather, the Legislature appears to have recognized that there may be something about the perpetrator's words or conduct at a place and time entirely removed from the communication of the threat that places the person threatened in reasonable fear that the threat will be carried out.
Such legislative awareness is evidenced by another section of the Act, RCW 9A.46.030, which provides that any harassment offense committed as set forth in 9A.46.020 may be deemed to have been committed where the conduct occurred, or at the place from which the threat or threats were made, or at the place where the threats were received. This section reflects a realistic understanding that a person may communicate a threat, directly or indirectly, at a given time and place, the person threatened may receive the threat at a different time and place, and words or conduct of the perpetrator that may have occurred at yet another time and place may *613 put the person threatened in reasonable fear that the threat will be carried out.
Such was the case in State v. Ragin, 94 Wash.App. 407, 972 P.2d 519 (1999). There, the victim befriended the defendant and, over a period of time, the defendant told the victim that he, the defendant, had been convicted of armed robbery, had been involved in domestic violence, and was well known to the police. Id. at 409, 972 P.2d 519. Some months later, during an episode of extreme rage directed in part toward the church that both the defendant and the victim attended, the defendant told the victim that he, the defendant, could build bombs, had access to guns and ties to organized crime, and that he could level the church and waste the pastors. Id. at 410, 972 P.2d 519. Then, some two weeks after that, the defendant called the victim from jail and, when the victim refused to post bail for him, the defendant threatened to murder the victim and his family. Id. The defendant was charged with felony harassment under RCW 9A.46.020(1)(a)(i). Id. The trial court allowed the victim to testify as to all the defendant had told the victim about the defendant's prior bad acts, as well as about the episode of rage and the threat to level the church and waste the pastors. Id. The defendant was convicted and he appealed, arguing that the trial court erred in admitting this testimony. Id. We said:
A defendant is guilty of felony harassment if he threatens to [kill] a person, and the person is placed in reasonable fear that the threat will be carried out. The fact finder applies an objective standard to determine whether the victim's fear that the threat will be carried out is reasonable. This requires the jury to consider the defendant's conduct in context and to sift out idle threats from threats that warrant the mobilization of penal sanctions. The State had to prove that it was reasonable for [the victim] to believe [the defendant] would kill [the victim] and his family.... [The victim's] knowledge of [the defendant's] prior violent acts was relevant to the reasonable fear element of felony harassment.
. . . .
... The jury was entitled to know what [the victim] knew at the time [the defendant] threatened him to decide whether a reasonable person knowing what [the victim] knew would believe [the defendant] could carry out the threats. The State was therefore allowed to use the frightening stories [the defendant] revealed to [the victim] to prove its case. Although the prior bad acts evidence admitted in felony harassment cases generally involves the victim, the same rationale applies here. In both instances, the earlier acts are necessary to put the threats in context.
Ragin, 94 Wash.App. at 411-12, 972 P.2d 519 (quotation marks and footnotes omitted).
In Ragin, the words or conduct of the defendant that placed the victim in reasonable fear that the threat to murder the victim and his family would be carried out took place weeks and months before the threat was made; it cannot be seriously argued that such words or conduct were designed to harass the victim. Although the threat in Ragin was communicated directly to the victim, it is easy to imagine a situation identical in every way to that in Ragin except the means by which the victim learns of the threatindirectly through a third person to whom the threat was communicated rather than directly from the defendantin which event the reasonableness of the victim's fear would have nothing to do with whether the defendant intended the threat to be further communicated to that victim. Put another way, the words or conduct of the defendant that place the person threatened subjectively in fear that the threat will be carried out must be weighed by the trier of fact in assessing the reasonableness of that person's fear. The words or conduct of the defendant at issue may or may not be connected with the threat itself, and may or may not have been intended by the defendant to place the person threatened in fear that the threat will be carried out. As in Ragin, the words or conduct of the defendant that cause the victim to take a threat seriously, and reasonably so, may have been communicated to the victim months earlier, in a context having nothing to do with the threat itself. See Ragin, 94 Wash.App. at 409-410, 972 P.2d 519.
*614 Similarly, when the defendant is charged under RCW 9A.46.020(1)(a)(i), the trier of fact must sift threats that warrant penal sanctions from idle threats, i.e., must determine whether the defendant "knowingly" made a threat to do bodily injury or to kill the person threatened or another person, i.e., whether the defendant knew subjectively that the statement would be interpreted, by whomever received it, as a serious expression of intent to inflict bodily harm upon or to take the life of another individual. And in making that assessment, the trier of fact may consider whether a reasonable person could foresee that the statement would be so interpreted, by whomever received it. See Shipp, 93 Wash.2d at 516-17, 610 P.2d 1322; Ragin, 94 Wash.App. at 412, 972 P.2d 519; Knowles, 91 Wash.App. at 373, 957 P.2d 797.
Thus, we conclude that the harassment statute does not require the State to prove that a perpetrator knew or intended that his or her indirect threat would be communicated to the person threatened. To violate the harassment statute, the perpetrator's threat must be knowingly communicated directly or indirectly; by some means the person threatened must find out about the threat; and words or conduct of the perpetrator must place the person threatened in reasonable fear that the threat will be carried out. But it is not necessary that the perpetrator know or intend that that the person threatened will find out, and it is not necessary that the perpetrator know or intend that the person threatened be placed in reasonable fear that the threat will be carried out based on words or conduct of the perpetrator. Indeed, the perpetrator is equally culpable under the harassment statute regardless of whether he or she had every reason to believe that the person to whom the threat was communicated would keep it confidentialsuch as might be the case with school chums who may be reluctant to squeal on other kidsso long as the necessary elements are proved beyond a reasonable doubt.
Because the meaning of the harassment statute can readily be discerned from the plain language of the statute and the entire legislative act, we will not address the parties' statutory construction arguments. See In re Charles, 135 Wash.2d at 250 n. 4, 955 P.2d 798.

II. Sufficiency of the Evidence
J.M. contends that reversal of his juvenile adjudication is required because the State presented insufficient evidence to prove the elements of harassment beyond a reasonable doubt. He also contends that the juvenile court failed to make findings as to all the necessary elements.
In reviewing a challenge to the sufficiency of the evidence, this court examines whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could find the elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 220-21, 616 P.2d 628 (1980). If we find that the evidence is insufficient in this case, we must reverse the adjudication and dismiss the charge. See State v. Hickman, 135 Wash.2d 97, 103, 954 P.2d 900 (1998).
As discussed above, the elements of the harassment statute, RCW 9A.46.020, are satisfied when a perpetrator knowingly communicates a threat, directly or indirectly, and by some means the person threatened finds out about it and is placed in reasonable fear that the threat will be carried out based on words or conduct of the perpetrator. In this case, the record reflects that J.M., an emotional student who had experienced disciplinary problems at school, and who was angry at the principal and other Denny Middle School authority figures, revealed a plan to shoot these men that was similar to the highly-publicized shootings at Columbine High School. This took place only a few days after the school shootings at Columbine. J.M. averred that he and an accomplice would enter the school, kill the principal and two others, and flee the state. According to two Denny Middle School students who heard the threat, J.M. seemed angry, excited, and agitated. One student believed that J.M. might carry out his plan, and asked a friend if he thought this to be possible. As a result of this conversation, which was overheard by a teacher, the principal of the school found *615 out what J.M. had said. The principal knew that J.M. had been suspended and that he had become highly emotional in response to past school disciplinary measures. The principal was afraid that the threat would be carried out.
Based on this evidence, a rational trier of fact could find beyond a reasonable doubt that J.M. knowingly communicated to two fellow students a threat to kill the principal, that the principal found out about the threat and was afraid it would be carried out, and that this fear was reasonable, based on words and conduct of J.M. Therefore, the State presented sufficient evidence to support J.M.'s felony harassment adjudication.
We find no deficiency in the juvenile court's written findings. After a juvenile's adjudicatory hearing, the "court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision." JuCR 7.11(d). "Ultimate facts" are defined as "[I]ssuable facts; facts essential to the right of action or matter of defense. Facts which are necessary to determine issues in case, as distinguished from evidentiary facts supporting them. The logical conclusions deduced from certain primary evidentiary facts. Final facts required to establish ... defendant's defense." BLACK'S LAW DICTIONARY 1522 (6th ed.1990) (citations omitted), quoted in Alvarez, 128 Wash.2d at 15 n. 15, 904 P.2d 754. The juvenile court's findings, which we have summarized in the statement of facts for this opinion, meet the requirements of JuCR 7.11(d) in every particular.
Accordingly, we affirm.
ELLINGTON, J., and BAKER, J., concur.