# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52633-6-II |
| Respondent, | |
| v. | |
| ERNEST JACKSON KORNEGAY, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Ernest Kornegay assaulted his girlfriend Krystal Whitley multiple times while they lived together. Eventually Whitley left Kornegay and moved in with a friend. One evening Kornegay went to the friend's apartment and asked Whitley for money. After Whitley refused, Kornegay held up a gun and threatened to "smoke" her if she did not give him some money. Whitley then handed Kornegay some money, and Kornegay left. Kornegay was eventually arrested, charged with second degree assault, and ordered to not have contact with Whitley. A few days prior to Kornegay's trial, the State amended the information to bring 16 additional charges that largely involved Kornegay's abuse of Whitley and his continued contact with Whitley.

Following a bench trial, the judge found Kornegay guilty of two counts of second degree assault and one count of false imprisonment for the abuse occurring while Kornegay and Whitley lived together. For the interaction outside the friend's apartment, the court found Kornegay guilty of first degree robbery and felony harassment. Because Kornegay had previous convictions for

second degree robbery and second degree assault, Kornegay was sentenced as a persistent offender. Kornegay's offender score also included a prior conviction for unlawful possession of a controlled substance.

With respect to his convictions, Kornegay contends that his convictions for first degree robbery and felony harassment must be reversed and dismissed because the trial court's findings of fact rest on insufficient evidence, and the findings as written do not support the guilty verdicts. Kornegay also argues that the trial court erred when it did not sua sponte dismiss all the charges against him when the State brought new charges a few days prior to trial.

With respect to his sentence, Kornegay argues that he must be resentenced for two reasons: first, Kornegay contends that recent legislation on persistent offender sentences[1] requires resentencing when one of the prior convictions on which a persistent offender sentence is based is second degree robbery; second, Kornegay contends that his prior conviction for unlawful possession of a controlled substance must be stricken from his criminal history score based on our supreme court's holding in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

Kornegay also raises claims of error in a statement of additional grounds (SAG).[2]

We hold that the trial court's findings of fact as to Kornegay's robbery conviction rested on sufficient evidence, and the findings supported the trial court's guilty verdict. We also hold, however, that Kornegay's felony harassment conviction is not supported by sufficient evidence. Further, we disagree with Kornegay's contention that the trial court should have sua sponte found

---

[1] RCW 9.94A.647.

[2] RAP 10.10(a).

2

that the State committed governmental misconduct and dismissed counts 1 through 4, and count 6.

As to Kornegay's sentence, we hold that Kornegay must be resentenced in accordance with RCW 9.94A.647, and that his prior conviction for unlawful possession of a controlled substance must be stricken from his criminal history pursuant to *Blake*. Finally, we conclude that none of the issues raised in the SAG have merit.

Accordingly, we affirm in part and reverse in part, and remand for dismissal of Kornegay's felony harassment conviction and for resentencing.

## FACTS

### I. UNDERLYING EVENTS

In September 2015, Kornegay began dating Whitley. The relationship started well, and approximately a month later Kornegay moved in with Whitley. About seven or eight months later Kornegay and Whitley started to argue, and the arguments became physical.

### A. COUNT 1 – SECOND DEGREE ASSAULT

During one argument, Whitley walked away from Kornegay. Kornegay followed her and used his hands to cover Whitley's mouth and nose. Whitley could not talk or breath, and Kornegay kept his hands over her face until she passed out.

### B. COUNTS 2 AND 3 – SECOND DEGREE ASSAULT AND FALSE IMPRISONMENT

On another occasion, Whitley and Kornegay were arguing when Kornegay pinned Whitley against a door; Whitley told Kornegay to leave her alone and to "get away." 2 Verbatim Report of Proceedings (VRP) at 183. Kornegay responded by hitting Whitley on the side of her head. Whitley

heard a pop and a whooshing noise. Whitley experienced hearing loss for a couple weeks after the assault, and she eventually sought medical treatment where she was told that her eardrum was torn.

C. COUNTS 4, 5, 6 – FIRST DEGREE ROBBERY, SECOND DEGREE ASSAULT, AND FELONY HARASSMENT

Whitley then moved in with a friend, and tried not to see Kornegay anymore. One evening, shortly after her hearing loss, Whitley and the friend were walking up to the friend's apartment after dark when Kornegay approached them. Kornegay told Whitley to " '[c]ome here.' " *Id.* at 188. Whitley "didn't want to deal with him anymore" and replied, " 'What? . . . What do you want?' " *Id.* Kornegay asked Whitley for money, and Whitley told him that she did not have any money. Kornegay insisted she did because she worked two jobs. Kornegay followed the women to the apartment door.

As the friend was opening the door, Kornegay told Whitley, " 'If you don't give me any money, I'm going to smoke you.' " *Id.* at 189. At that point, Whitley saw that Kornegay was pointing a gun at her. Whitley replied, " 'If you're going to do it, just do it.' " *Id.* at 190. Whitley then gave Kornegay some money so he would leave. Whitley went inside, and Kornegay left.

D. INITIAL CHARGE

In December 2016, the State charged Kornegay with second degree assault with a special allegation of domestic violence. The court issued a no-contact order, prohibiting Kornegay from contacting Whitley.

## II. PRE-TRIAL PROCEEDINGS

On August 29th, Kornegay asked the court for permission to represent himself, and the court granted the request. The order granting Kornegay's motion notes that he was advised at that

time that there were charges being held back and that another arraignment was possible. The trial was set for September 18, 2017.

On September 15, the court heard several motions. Although Kornegay did not provide this court with a transcript of this hearing, the clerk's minute sheet reflects that Kornegay requested a continuance of the trial so that he could locate several witnesses. Kornegay told the trial court that he was amenable to setting the trial date "after December." Clerk's Papers (CP) at 441. The minutes also reflect that Kornegay made a motion "for work product," and asked for permission to "work on his defense in his cell." *Id.* The minute sheet for this hearing also reflects that the State moved to amend the information and the trial court accepted the second amended information. The trial court set a new trial date of January 8, 2018. The minute sheet does not reflect that Kornegay objected to the amendment of the information.

The second amended information detailed the following charges:

- Count 1 – Second Degree Assault by strangulation or suffocation contrary to RCW 9A.36.021(1)(g) with a domestic violence aggravator
- Count 2 – Second Degree Assault with a domestic violence aggravator
- Count 3 – Unlawful Imprisonment with a domestic violence aggravator
- Count 4 – First Degree Robbery with a domestic violence aggravator
- Count 5 – Second Degree Assault with a deadly weapon with a domestic violence aggravator
- Count 6 – Felony Harassment with a domestic violence aggravator
- Count 7 – First Degree Unlawful Possession of a Firearm[3]
- Count 8 – Possession of a Stolen Vehicle
- Counts 9 through 15 and Count 18 – Violation of a No-Contact Order
- Counts 16 and 17 – Witness Tampering

*Id.* at 1-19.

---

[3] The charges for unlawful possession of a firearm and possession of a stolen vehicle were originally charged in November 2016 under a different cause number. We do not discuss the facts underlying charges 7-18 because they are irrelevant to our analysis.

## III. Trial

### A. Guilty Plea to Counts 7 through 18

On the first day of Kornegay's bench trial, Kornegay pleaded guilty to counts 7 through 17, and the State filed an amended information that withdrew count 18. Kornegay went forward with the bench trial on counts 1 through 6.

### B. Testimony

At trial, Whitley's testimony was consistent with the facts above. Regarding the abuse, Whitley explained, "[w]hen [Kornegay] gets upset, he just hits me." 2 VRP at 181. "[I]t was kind of normal that [Kornegay] would hit me all the time. So, I just sat there." *Id.* at 184. Whitley often did not know why Kornegay would become abusive.

Regarding the incident outside the apartment, Whitley explained that when she told Kornegay to " 'just do it' " she meant that, "If he was going to shoot me, just shoot me." *Id.* at 190. Whitley testified that she was not scared; instead, she was "tired of dealing with it and all the threats." *Id.* at 191.

### C. Trial Court's Findings and Conclusions

Relevant to the issues raised in this appeal, the trial court found Whitley to be a credible witness, and found that the abuse started in May 2016 and lasted until November 2016. For count 1, second degree assault by suffocation, the court found that Kornegay placed his hands over Whitley's mouth and nose until she passed out. For counts 4 and 6, the court found that Kornegay asked Whitley for money and that she refused to give him anything. The court also found that Kornegay threatened to "smoke" Whitley and that Whitley then gave Kornegay 10 or 15 dollars

to get Kornegay to leave. Furthermore, the court found Whitley was not scared of Kornegay but that she was tired of dealing with his threats.

Based on its factual findings, the court found Kornegay guilty on counts 1 through 4 and count 6, and acquitted Kornegay on count 5.

The court sentenced Kornegay to life without the possibility of parole under the persistent offender statute because Kornegay's previous offenses included second degree robbery and second degree assault.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE OF ROBBERY AND FELONY HARASSMENT

Kornegay claims that the court's findings that Whitley was not afraid and gave Kornegay the money so he would leave does not support the court's conclusion that Kornegay was guilty of first degree robbery and felony harassment. Kornegay further contends that even if the court had made the requisite findings for those convictions, such findings would not be supported by the evidence.

The State concedes that it failed to prove all the elements for the robbery and felony harassment convictions.

We hold that sufficient evidence supports Kornegay's robbery conviction and reject the State's concession as to that conviction. We agree that the felony harassment conviction rests on insufficient evidence and accept the State's concession as to that count.

No. 52633-6-II

## A. LEGAL PRINCIPLES

### 1. Sufficiency of the Evidence

"[F]ollowing a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). " 'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id.* at 106. When we review challenges to the sufficiency of the evidence, we consider, "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *Id.* at 105. By challenging the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that arise from the evidence. *Id.* at 106. Inferences are drawn in favor of the State and " 'interpreted most strongly against the defendant.' " *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We review challenges to the sufficiency of the evidence de novo. *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019).

### 2. Robbery

Pursuant to RCW 9A.56.190, a person commits robbery when the person takes personal property from the victim against the victim's will by use, or the threat of use, of immediate force, violence, or fear of injury. In other words, "Robbery encompasses any 'taking of . . . property [that is] attended with such circumstances of terror, or such threatening by menace, word or gesture as in common experience is likely to create an apprehension of danger and induce a [person] to part with property for the safety of his person.' " *State v. Witherspoon*, 180 Wn.2d 875, 884, 329 P.3d 888 (2014) (emphasis omitted) (first two alterations in original) (internal quotation marks omitted) (quoting *State v. Shcherenkov*, 146 Wn. App. 619, 624-25, 191 P.3d 99 (2008)). We use an

8

objective test to determine "whether an ordinary person in the victim's position could reasonably infer a threat of bodily harm from the defendant's acts." *Id.* " 'Any force or threat, no matter how slight, which induces an owner to part with his property is sufficient to sustain a robbery conviction.' " *State v. Clark*, 190 Wn. App. 736, 756-57, 361 P.3d 168 (2015) (quoting *State v. Handburgh*, 119 Wn.2d 284, 293, 830 P.2d 641 (1992)).

### 3. Felony Harassment

A conviction for felony harassment requires that the State prove the defendant threatened to kill the victim or another individual. RCW 9A.46.020(2)(b). Furthermore, the State must prove that the victim subjectively understood the defendant's threat as a genuine expression of intent to kill. RCW 9A.46.020(1)(a)(i), (iv); *State v. J.M.*, 101 Wn. App. 716, 729, 6 P.3d 607 (2000).

### B. ANALYSIS

### 1. Robbery

Kornegay contends that because the court found that Whitley was not afraid when Kornegay threatened her, Whitney was not compelled by Kornegay's threat to kill her when she handed over the money. He contends that the victim in a robbery must subjectively experience fear, and since Whitley reported not experiencing such fear, his robbery conviction rests on insufficient evidence.

*Witherspoon*, 180 Wn.2d at 884, is instructive because the defendant in that case made the same argument that Kornegay makes here. In *Witherspoon*, the defendant argued he could not be convicted of robbery where the evidence did not show that he instilled fear in the victim. *Id.* Our supreme court disagreed, noting intimidation is determined using an objective test. *Id.* "We consider whether an ordinary person in the victim's position could reasonably infer a threat of

bodily harm from the defendant's acts." *Id.* Because Witherspoon told the victim that he had a gun just prior to taking her property, the court concluded that a rational jury could have found that the defendant threatened to use force if necessary to retain the victim's property. *Id.* at 885.

Kornegay similarly argues that because Whitley did not subjectively experience fear, the State failed to prove he committed robbery. But this is the same subjective fear argument rejected by the supreme court in *Witherspoon*. *Id.* at 884. The question before us is whether a rational jury could infer that a reasonable person in Whitley's position could interpret Kornegay's actions as a threat of force used to obtain or retain the stolen property. *Id.* Taking the evidence in the light most favorable to the State, we answer that question in the affirmative. Kornegay does not dispute that the evidence, and the court's findings, establish that Kornegay pointed a gun at Whitley and threatened to shoot her if she did not give him money. Therefore, a rational factfinder could have found Kornegay's actions were a threat that he would use force if necessary to obtain Whitley's property.

Furthermore, we are unpersuaded by Kornegay's argument that his threat did not induce Whitley to part with her property because she testified, and the court found, that Whitley gave Kornegay the money so he would leave. " 'Any force or threat, no matter how slight, which induces an owner to part with his property is sufficient to sustain a robbery conviction.' " *Clark*, 190 Wn. App. at 756-57 (quoting *Handburgh*, 119 Wn.2d at 293). Kornegay asked Whitley for money, and Whitley refused. Kornegay then threatened to harm her if she did not give him the money; only after that threat did Whitley hand over the money. Taking the evidence in the light most favorable to the State, we think it reasonable for the jury to infer that Kornegay's threat induced Whitley to hand over the money so that Kornegay, the man threatening to harm her, would go away. The

evidence is clear that what occurred was the " 'taking of . . . property [that was] attended with such *circumstances of terror,* or such threatening by *menace, word or gesture* as in common experience is likely to create an apprehension of danger and induce a man to part with property for the safety of his person.' " *See Witherspoon*, 180 Wn.2d at 884 (alterations in original) (internal quotation marks omitted) (quoting *Shcherenkov*, 146 Wn. App. at 624-25).

The evidence is sufficient to sustain Kornegay's robbery conviction.

*2. Felony Harassment*

Kornegay also contends that because the trial court found that Whitley did not fear Kornegay's threat, there was insufficient evidence to support his felony harassment conviction. The State concedes that the evidence is insufficient to sustain Kornegay's felony harassment conviction.

We agree that the evidence is insufficient to sustain Kornegay's felony harassment conviction.

Pursuant to RCW 9A.46.020(1)(a)(i), (iv), a person commits felony harassment when, without lawful authority, the person threatens to kill another person and the person threatened reasonably believes that the threat will be carried out. Unlike the analysis pertaining to Kornegay's robbery conviction, to sustain his conviction for felony harassment the evidence must show that Whitley subjectively feared that Kornegay would carry out his threat to kill her, and that such fear on her part was reasonable. *State v. C.G.*, 150 Wn.2d 604, 610, 80 P.3d 594 (2003); *J.M.*, 101 Wn. App. at 729.

Here, there is no evidence that Whitley believed that Kornegay's threat to "smoke" her was a threat to kill her, or that she believed Kornegay would carry the threat out. *C.G.*, 150 Wn.2d at

610; *J.M.*, 101 Wn. App. at 729. Accordingly, we reverse Kornegay's felony harassment conviction for insufficient evidence.

II. PERSISTENT OFFENDER STATUTE AND BLAKE

Kornegay argues he must be resentenced due to recent legislative action that requires a defendant to be resentenced if their persistent offender sentence was based on second degree robbery and the supreme court's recent decision declaring Washington's strict liability drug possession statute unconstitutional. The State concedes that resentencing is necessary. We agree that Kornegay is entitled to resentencing.

While Kornegay's appeal was pending, the state legislature enacted RCW 9.94A.647 that went into effect on July 25, 2021. LAWS OF 2021, ch. 141, § 1. Under RCW 9.94A.647, if "an offender has been sentenced as a persistent offender, the offender must have a resentencing hearing if a current or past conviction for robbery in the second degree was used as a basis for the finding that the offender was a persistent offender." Accordingly, because a second degree robbery conviction was used as a basis for Kornegay's persistent offender sentence, Kornegay must be resentenced.[4]

Furthermore, in *Blake*, 197 Wn.2d at 195, the supreme court held that former RCW 69.50.4013(1) (2017), Washington's strict liability drug possession statute, is void because it

---

[4] We note that Kornegay states that he should be resentenced "under the standard sentencing grid." Supp. Br. of Appellant at 6. The State correctly notes that the trial court found, acting as the fact finder, the existence of aggravating factors under RCW 9.94A.535. Given that Kornegay did not make any assignment of error related to the aggravating factors, and his brief does not include any argument regarding the aggravators, we understand his language regarding the standard range to be an inadvertent addition. To the extent Kornegay is challenging the aggravating factors with this passing statement, we decline to consider such a challenge. RAP 10.3(a)(6); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)(noting that "[p]assing treatment of an issue or lack of reasoned argument" does not merit our consideration).

violates state and federal due process clauses. When a conviction is based on an unconstitutional statute, that conviction cannot be considered in calculating the offender score. *See State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). On remand Kornegay's previous conviction for unlawful possession of a controlled substance cannot count towards Kornegay's offender score, and Kornegay must be resentenced accordingly.

### III. GOVERNMENTAL MISCONDUCT

Kornegay argues that the trial court erred when it did not, sua sponte, find that the State engaged in government misconduct by adding charges the last court day before Kornegay's trial, and did not thereby dismiss counts 1 through 4 and count 6.

We find no error.

## A. CrR 8.3

Under CrR 8.3(b), the trial court, on its own motion and "after notice and hearing, may dismiss [a] criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

## B. ANALYSIS

Kornegay's claim of governmental misconduct stemming from the State's addition of charges on September 15th warranting dismissal under CrR 8.3 is raised for the first time on appeal. Kornegay contends that the trial court was required, sua sponte, to hold a hearing under CrR 8.3(b) to determine whether the State engaged in arbitrary action or governmental misconduct. But Kornegay cites no authority holding that the superior court has such a duty. When "no authorities are cited in support of a proposition, the court is not required to search out authorities,

but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Moreover, Kornegay did not provide this court with a transcript of the hearing at which the trial court granted the State's motion to amend the information adding new counts, and at which Kornegay requested a continuance of the trial. Instead, Kornegay provided this court with the clerk's minute sheet memorializing what occurred at this September 15, 2017 hearing. At this hearing, the minutes merely reflect that Kornegay requested a continuance of the trial so that he could locate several witnesses. The minutes also reflect that Kornegay made a motion "for work product," and asked for permission to "work on his defense in his cell." CP at 441.

Even if Kornegay had persuaded us that the trial court erred in not sua sponte raising a claim of governmental misconduct, we cannot even determine whether the continuance in this case

was caused by the State's amendment to the information or by Kornegay's desire for more time to

locate witnesses he intended to produce at trial.[5]

---

[5] To the extent Kornegay contends, in a footnote, that a claim of governmental misconduct under CrR 8.3(b) may be brought for the first time in this court, this argument fails. First, CrR 8.3(b) is a superior court motion, and by its plain language it requires a hearing in *superior court.* Second, RAP 2.5 does not apply to this claim because Kornegay does not argue, in this assignment of error, that his constitutional right to a speedy trial was *violated.* Rather, he claims, at most, that the State's late amendment to the information was unreasonable and that his trial was needlessly continued to accommodate the amendment. Kornegay fails to cite any authority addressing the constitutional right to a speedy trial, nor does his argument set forth the test we are to apply for determining whether this right has been violated. *Holland*, 90 Wn. App. at 538 (noting "[p]assing treatment of an issue or lack of reasoned argument" does not merit our consideration); *DeHeer*, 60 Wn.2d at 126.

Instead, Kornegay relies entirely on *State v. Michielli*, 132 Wn.2d 229, 245, 937 P.2d 587 (1997). However, *Michielli* lends no support to Kornegay's argument. In *Michielli*, the State amended the information three business days before the scheduled trial. *Id.* at 233. Michielli was forced to waive his right to a speedy trial under CrR 3.3 because his attorney was unprepared to go to trial on the amended charges. *Id.* The trial court granted Michielli's motion to dismiss the amended information under CrR 8.3(b). *Id.* at 233-34. Our supreme court affirmed the trial court, holding that mismanagement such as what occurred in Michielli's case is sufficient to satisfy the governmental misconduct standard set forth in CrR 8.3(b). *Id.* at 244-45. Because Michielli involved a CrR 8.3(b) challenge that was litigated in the trial court, it is wholly inapposite to this case.

Even assuming Kornegay had identified a specific constitutional right that was violated, he fails to show that the alleged error was manifest. Kornegay does not allege that his defense was inadequate due to the late amendment, nor does Kornegay show that the amended information forced him to request a continuance and waive his right to a speedy trial under CrR 3.3. As we note, the record Kornegay provided to this court does not demonstrate that Kornegay's reason for requesting a continuance was the State's late amendment to the information.

Kornegay fails to demonstrate error in the trial court's failure to dismiss counts 1-4, and count 6, sua sponte.[6]

SAG

A. INSUFFICIENT EVIDENCE

*1. Second Degree Assault by Suffocation, Count 1*

Kornegay argues that insufficient evidence supports his second degree assault by suffocation conviction, count 1, because there was no evidence that the assault occurred in a bathroom.

Here, there is sufficient evidence to support a second degree assault conviction. "A person is guilty of assault in the second degree if he . . . [a]ssaults another by strangulation or suffocation." RCW 9A.36.021(1)(g). The trial court found that Kornegay put both of his hands over Whitley's mouth and nose in a manner that prevented Whitley breathing and that he held his hands there until Whitley passed out. Both of these findings are supported by Whitley's testimony.

Nothing in RCW 9A.36.021(1)(g) limits this charge to assaults occurring in certain locations. Whether the assault occurred in the bathroom or in the bedroom is not an element of an assault charge, and the exact location of an assault is not an essential element that the State must prove.

---

[6] Kornegay includes an assignment of error stating "Kornegay received ineffective assistance of counsel." Br. of Appellant at 2 (assignment of error 5). However, Kornegay abandons this assignment of error by making no argument about it in his brief. Other than the portions of his factual statement where he mentions that he raised a claim of ineffective assistance of counsel below, Kornegay never mentions ineffective assistance of counsel again. As such, we do not address this assignment of error. RAP 10.3(a)(6) (requiring a party to supply in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record.").

We conclude that there was sufficient evidence for the second degree assault conviction for count 1.

*2. Domestic Violence Aggravator*

Kornegay argues there is insufficient evidence to support the prolonged period of time element for the aggravating circumstance of domestic violence because that element requires years of abuse. We disagree.

Whether abuse occurred over a prolonged period of time is a factual determination reserved for the fact finder. *State v. Sandoval*, 8 Wn. App. 2d 267, 279, 438 P.3d 165 (2019). Courts have held that evidence of less than two months of abuse is sufficient to support the fact finder's determination that the abuse occurred over a prolonged period of time. *State v. Brush*, 5 Wn. App. 2d 40, 64-65, 425 P.3d 545 (2018); *State v. Epefanio*, 156 Wn. App. 378, 392, 234 P.3d 253 (2010). Here, the court found, and Whitley testified, that the abuse lasted from April or May to November, approximately seven months. Therefore, we conclude there was sufficient evidence that the abuse occurred for a prolonged period of time.

## B. UNCHARGED OFFENSE

Kornegay also claims that his conviction for count 1 was based off an uncharged offense. The basis of Kornegay's claim is unclear. Kornegay was charged with second degree assault under RCW 9.36.021(1)(g) for count 1 and was likewise convicted of second degree assault based on RCW 9.36.021(1)(g) for count 1. Kornegay's claim fails.

## C. PROSECUTORIAL MISCONDUCT

Kornegay argues that the prosecutor engaged in misconduct by expressing personal opinions regarding witness credibility.

17

> When the defendant does not object to the prosecutor's remarks, a defendant waives the prosecutorial misconduct claim unless the defendant shows (1) that comments were improper, (2) that the prosecutor's comments were both flagrant and ill-intentioned, (3) that the effect of the improper comments could not have been obviated by a curative instruction, and (4) a substantial likelihood the misconduct affected the verdict.

*State v. Gouley*, 19 Wn. App. 2d 185, 200, 494 P.3d 458 (2021), *review denied*, ___ Wn.2d ____, 502 P.3d 854 (2022).

Here, Kornegay did not object to the prosecutor's comments at trial and fails to provide us with any arguments regarding curative instructions or whether there was a substantial likelihood that the alleged misconduct affected the verdict. We conclude that Kornegay fails to make the requisite showing to sustain his prosecutorial misconduct claim.

D. INSUFFICIENT CHARGING DOCUMENT

Kornegay claims that the information was insufficient because it merely recites the underlying statutes, it is vague, and there are missing elements.

We decline to consider this issue because Kornegay fails to provide sufficient details to appraise us of the nature of the alleged error as is required. RAP 10.10(c); *State v. Griepsma*, 17 Wn. App. 2d 606, 623, 490 P.3d 239, *review denied*, 198 Wn.2d 1016 (2021). Kornegay states that the information is insufficient because it merely recites the language from the underlying statute. However, merely reciting the language from the statute is not automatically grounds for an insufficient information. *State v. Delcambre*, 116 Wn.2d 444, 450-51, 805 P.2d 233 (1991). Furthermore, Kornegay does not identify the counts he believes are vague. Nor does Kornegay identify the counts that he believes are missing elements or what elements are missing. We are not obligated to search the record to find an error that might support Kornegay's allegations. RAP 10.10 (c).

E. Speedy Trial

Kornegay contends that his constitutional right to a speedy trial was "triggered" when he was placed under arrest for possession of a stolen motor vehicle, unlawful possession of a firearm, and a Department of Corrections warrant, rather than two weeks later when, he claims, he was "charged with those crimes." SAG at 4. Thus, he contends, his constitutional right to a speedy trial was violated. Even assuming Kornegay is correct in his rendition of the events related to his arrest and the filing of charges, Kornegay does not tell us how this resulted in a violation of his *constitutional right* to a speedy trial.

Under the Sixth Amendment to the United States Constitution and article 1, section 22 of the state constitution, a defendant is guaranteed the right to a speedy trial. We employ the test outlined in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to determine whether a defendant has suffered a violation of his constitutional right to a speedy trial. *State v. Nov*, 14 Wn. App. 2d 114, 128, 469 P.3d 352 (2020), *review denied*, 196 Wn.2d 1034 (2021). The *Barker* factors include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. Considering these factors, we discern no violation of Kornegay's constitutional right to a speedy trial even if his speedy trial rights were "triggered" at the time of his arrest.[7]

---

[7] Kornegay also mentions the State's amendment to the information and claims he was forced to waive his CrR 3.3 right to a speedy trial in order to prepare his defense, resulting in a violation of his constitutional right to a speedy trial. But as we note above, the record provided to us on review demonstrates that Kornegay sought a continuance, at least in part, because he needed to locate witnesses he intended to call in his case. The limited record we were provided does not demonstrate that Kornegay was motivated to seek a continuance based on the amendment of the information.

F. CUMULATIVE ERROR

Finally, Kornegay argues there was cumulative error. But the only error established in Kornegay's brief or SAG was regarding his felony harassment conviction. Without multiple errors, there can be no cumulative error. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014) ("The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless."), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). Therefore, because there was only one error, there was no cumulative error.

CONCLUSION

We hold that due to recent legislation regarding persistent offenders, RCW 9.94A.647, and the supreme court's decision in *Blake*, Kornegay must be resentenced in accordance with those changes. Additionally, we conclude that the evidence and the court's findings do not support its conclusion that Kornegay was guilty of felony harassment. However, we conclude that the trial court's findings support a conclusion that Kornegay was guilty of first degree robbery and that the evidence supports the court's findings on that count. Further, we conclude that the court did not err in failing to dismiss counts 1 through 4 and count 6. Finally, we hold that none of the issues in Kornegay's SAG warrant reversal or remand. Accordingly, we affirm in part, reverse in part and remand for further proceedings in accordance with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 52633-6-II

CRUSER, J.

We concur:

WORSWICK, J.

GLASGOW, A.C.J.

21